IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| SALLIE STARKEY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:22-cv-00293 |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | § § § § § | |
| Defendant. | § § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Sallie Starkey, and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendants other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq*., and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Southern District of West Virginia pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff, Sallie Starkey (hereinafter "Plaintiff"), was at all relevant times, a resident of the City of Danville, County of Boone, State of West Virginia.

7. Plaintiff alleges upon information and belief that Kanawha Hospice Care, Inc., Employee Benefits Plan (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

8. The Plan provides eligible employees with disability income protection as defined by the Plan.

9. Plaintiff alleges upon information and belief that Kanawha Hospice Care, Inc., is the Plan Sponsor and Plan Administrator of the Plan.

10. Kanawha Hospice Care, Inc., and/or the Plan additionally maintained or contained other benefits and/or component plans under which Plaintiff may be entitled to benefits if found disabled under the long-term disability Plan.

11. Plaintiff alleges upon information and belief that Defendant Guardian Life Insurance Company of America is the party obligated to pay benefits and to determine eligibility for benefits under the Plan and is an insurance company authorized to transact the business of insurance in this state.

12. The Guardian Life Insurance Company of America is the underwriter for Group Policy Number G-00454869 and may be served with process by and through its registered agent, Corporation Service Company, 209 West Washington Street, Charleston, West Virginia 25302, or at its principal pace of business located at 10 Hudson Yards, New York, New York 10001.

## FACTS

13. Defendant Guardian Life Insurance Company of America (hereinafter "Guardian") was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

14. The long-term disability Plan is fully insured by Guardian under Group Policy Number G-00454869.

15. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Guardian issued

its final denial on February 26, 2021.

16. The Plaintiff was employed as a Registered Nurse Case Manager by Kanawha Hospice Care, Inc., at its location in Charleston, West Virginia, and as such, Plaintiff was thereby a participant or beneficiary of the Plan, and is covered by the policy that provides benefits under the Plan.

17. The Plaintiff ceased work on or about August 29, 2017, due to a disability while covered under the Plan.

18. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

19. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

20. Having submitted his appeal, and as confirmed by Guardian, Plaintiff exhausted her administrative remedies.

21. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

22. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability prevents her from performing, on a full-time basis, the major duties of her own occupation, and then, after 24 months of eligibility, from performing, on a full-time basis, the

major duties of any gainful work; gainful work means work for which Plaintiff is, or may become, qualified by: (a) training; (b) education; or (c) experience.

23. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits through January 24, 2020, and who is entitled to a gross long-term disability benefit of $3,345.00 per month, offset by a Social Security primary benefit of $1,728.00 per month (there are no auxiliary beneficiaries), for net long-term disability benefit of $1,617.00 from January 25, 2020 to March 10, 2028, such that she is entitled to $45,064.30 in back benefits, $103,125.71 in future benefits (using 3.50% to discount to present value) with an overpayment of $14,803.20 already paid, for a total long-term disability benefit of $148,190.01.

24. Evidence submitted by Plaintiff to Guardian supporting her disability includes, *inter alia*, the following: that Plaintiff suffers from the following impairments: chronic pancreatitis with severe diffuse hepatic steatosis, tachycardia, postural orthostatic tachycardia syndrome ("POTS"), compression fracture of L2, annular tear at L3-4, posterior disc bulge with protrusion and annular tear at L4-5, posterior disc bulge, bilateral facet hypertrophy at L5-S1, broad-based protrusion at C4-5 with thecal sac effacement, osteoarthritis, bilateral carpal tunnel syndrome, Chiari I

malformation with occipital decompression and subcortical white matter signal changes, cervical and lumbar radiculopathy, coronary artery disease, gastroesophageal reflux disease, hypertension, hypotension, irritable bowel syndrome, hyperlipidemia, cognitive decline, lymphomatoid papulosis, migraines, and palpitations.

25. Further evidence submitted by Plaintiff to Guardian includes a June 7, 2019 medical opinion by Plaintiff's gastroenterologist, Jeremy Stapleton, D.O., indicating work restrictions from progressive, chronic, debilitating pancreatitis which were work preclusive; a July 2, 2019 fully-favorable decision by the Social Security Administration granting disability benefits as of August 29, 2017, stating the Plaintiff has migraine headaches, tension headaches, Chiari malformation, recurrent pancreatitis with gastroparesis and stent placement, GERD and IBS such that she cannot complete a normal work schedule on a sustained and consistent basis; a July 18, 2019 medical opinion by Dr. Stapleton indicated his patient cannot stand for extended periods of time, has ongoing daily pain and nausea and must take Zofran/Phenergan multiple times throughout the day which causes drowsiness which, in turn, causes her to fall asleep at times on this medication, and 1 hour of housework exhausts the Plaintiff and worsens her GI symptoms; a January 4, 2021 medical opinion by Dr. Stapleton stating

his patient remains disabled; and a February 5, 2021 medical opinion by Howard W. Lafferty, D.O., indicating work preclusive limitations.

26. The Plaintiff's medication regimen has included the following: biotin, cholecalciferol, ferrous sulfate, gabapentin, lactobacillus acidophilus, linaclotide, magnesium oxide, midodrine, nortriptyline, omega-3 polyunsaturated fatty acids, ondansetron, pancrelipase, pantoprazole, promethazine, ranitidine, rizatriptan, ropinirole, simvastatin, tizanidine, topiramate, ubiquinone and zinc sulfate. The Plaintiff also received multiple cervical and lumbar facet blocks.

27. Ignoring evidence of pain, fatigue or other disabling conditions because they are subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

28. An ability to perform the material and substantial duties of any fulltime occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

29. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, being off task more than 10% of the work period, and/or being chronically absent. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D.Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D.Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D.Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D.Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D.Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D.Mich., 2013).

30. There is no requirement that the insured provide *only* objective medical evidence or other objective indica of disability.  Since the policy does not say it, Guardian does not have the authority to require it.  *See, e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).   To the extent the policy does require objective medical evidence, such evidence includes: diagnostic testing, laboratory reports, medical records of a doctor's exam documenting clinical signs,

presence of symptoms and test results consistent with generally accepted medical standards. Plaintiff has provided this evidence to Guardian.

31. The relevant policy allows for independent medical examinations and functional capacity examinations. Guardian failed to conduct any such examinations. All of Guardian's opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Guardian Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

32. Guardian, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009). Guardian's denial of Plaintiff's long-term disability benefits is itself evidence that it failed to behave as a fiduciary in the instant matter.

33. Guardian relied on medical consultants and/or on third party vendors, including, *inter alia*, Genex, to conduct file reviews during the administrative appeal of Plaintiff's disability claim and said consultants and/or vendors opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work reliability, consistency, substantial capacity and steady attendance.

34. In 2010, Genex bought the Life Insurance Company of North America's disability case management business. At one time Genex's website provided context for its "cost cutting" mission and the fact that it only serves the insurance industry: "For over 30 years, Genex has been the recognized industry leader for managing disabilities" and "Genex's Disability…Absence Management Services provide high-quality, customizable services driven by specialized disability management expertise to help payers reduce claims costs…" and "Specialized, customizable services delivered by in-house disability experts help you reduce claims costs…" *See*, *e.g.*, *Jones v. Life Insurance Company of North America*, Case No. 2:19-cv-04669-DLR (D. Ariz.).

35. Guardian also referred Plaintiff to Genex to pursue her Social Security disability claim.

36. Guardian did this because it offsets its long-term disability payments by its

insureds' Social Security disability benefit and this reduction is considered to be one of the most important cost containment features of its long-term disability contracts and is usually termed "recovery of an overpayment."

37. Genex provides attorneys for the insureds of disability insurance companies like Guardian so that the insureds can pursue Social Security disability benefits.

38. Genex also provides "overpayment recovery specialists" to disability insurance companies like Guardian so that Guardian can recover the Social Security disability back benefits from its insureds.

39. Genex recovered $29,779.00 from Plaintiff's Social Security disability back benefits for the Guardian.

40. There are no challenges to Plaintiff's credibility. In other words, Plaintiff's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability and steady attendance. Guardian's medical consultants have failed to substantively account for, much less address, any of these issues.  Additionally, the claim Plaintiff could work in her own occupation as a Registered Nurse Case Manager or in any full-time competitive employment with such pain and fatigue 8 hours a day, 40 hours a week, month in and month out, is simply unreasonable and

not believable. Accordingly, Plaintiff has satisfied her obligations of providing proof of her physical disability under the policy.

41. The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

42. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

43. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

44. Defendant Guardian was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

45. Defendant Guardian allowed its concern over its own funds to influence its decision-making.

46. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

47. Guardian's administrative process did not provide Plaintiff with a full and fair review; by way of example, Guardian's denial letters did not contain the

specific reasons for the denial and did not advise Plaintiff of the information Guardian required in order to approve her continuing benefits.

48. The disability insurance policy does *not* provide Guardian with discretionary authority.

49. In the alternative, relevant state law bans any such clause purporting to confer Guardian with discretionary authority.

50. At all times relative hereto, Guardian has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Guardian's own assets with each payment depleting those same assets.

51. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Guardian is an ERISA fiduciary.

52. Under ERISA, a fiduciary must carry out its duties with respect to the plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53. Guardian failed to satisfy its duties under ERISA as specified in paragraph 52 of this complaint.

54. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

55. Guardian failed to satisfy its duties under ERISA as specified in paragraph 54 of this complaint.

56. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

57. Guardian failed to satisfy its duties under ERISA as specified in paragraph 56 of this complaint.

58. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and to resolve undeterminable issues in its insured's favor.

59. Guardian failed to satisfy its duties under ERISA as specified in paragraph 58 of this complaint.

60. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective and thorough evaluation of its insured's claims for disability benefits.

61. Guardian failed to satisfy its duties under ERISA as specified in paragraph 60 of this complaint.

62. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

63. Guardian failed to satisfy its duties under ERISA as specified in paragraph 62 of this complaint.

64. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

65. Guardian failed to satisfy its duties under ERISA as specified in paragraph 64 of this complaint.

66. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

67. Guardian failed to satisfy its duties under ERISA as specified in paragraph 67 of this complaint.

68. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

69. Guardian failed to satisfy its duties under ERISA as specified in paragraph 68 of this complaint.

70. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

71. Guardian failed to satisfy its duties under ERISA as specified in paragraph 70 of this complaint.

72. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

73. Guardian failed to satisfy its duties under ERISA as specified in paragraph 72 of this complaint.

74. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

75. Guardian failed to satisfy its duties under ERISA as specified in paragraph 74 of this complaint.

### CAUSE OF ACTION
### FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
### PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 75 as if fully stated herein and says further that:

76. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits in the event that Plaintiff became disabled as defined in the Plan.

77. Plaintiff is disabled under the terms of the Plan.

78. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

79. The decision to deny benefits was wrong under the terms of the Plan.

80. The decision to deny benefits and decision-making process were arbitrary and capricious.

81. The decision to deny benefits was not supported by substantial evidence in the record.

82. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

83. The appellate procedures did not provide the Plaintiff a full and fair review.

84. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

85. The Defendant violated the fiduciary duties owed to the Plaintiff.

86. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to

which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

87. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;
2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);
3. Prejudgment and postjudgment interest;
4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;
5. An Order requiring the Defendant and/or Plan to provide Plaintiff with any other benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this Court deems just and proper.

Dated this 19th day of July, 2022.

                        Respectfully submitted,

           BY:   */s/D. Seth Holliday*
                  D. SETH HOLLIDAY (*pro hac vice pending*)
                  **MCMAHAN LAW FIRM, LLC**
                  700 S. Thornton Avenue
                  P.O. Box 1607
                  Dalton, Georgia 30722
                  (706) 217-6118
                  sholliday@mcmahanfirm.com

                  *Attorney for Plaintiff*


                  */s/ Ryan W. Walters*
                  Ryan W. Walters (WVSB #14113)
                  ryanwalters@shafferlaw.net
                  SHAFFER & SHAFFER, PLLC
                  P.O. Box 3973
                  Charleston, West Virginia 25339
                  T: 304.344.8716

                  *Attorney for Plaintiff*